# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.    CV 09-3784-GW(AGRx)                                    Date    August 17, 2009

Title    *Fernando Gonzalez v. Newport Exchange Holdings, Inc., et al.*

---

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Pat Cuneo | |
| --- | --- | --- |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| --- | --- |
| James A. McQueen | Mark L. Eisenhut |

PROCEEDINGS:    **DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (filed 07/27/09)**

Hearing is held. The tentative circulated is hereby adopted as the Court's final ruling (attached). Defendants' Motion to Dismiss First Amended Complaint is **granted with leave to amend.**

Counsel for plaintiff will have until September 1, 2009 to file an amended complaint.

IT IS SO ORDERED.

:    02

Initials of Preparer    JG

## Background

Plaintiff Fernando Gonzalez ("Gonzalez" or "Plaintiff") is suing Defendants Newport Exchange Holdings, Inc. dba Online Trading Academy, OTA Franchise Corporation, Eyal Shahar, and Michael McMahon (together, "Defendants") primarily over his rights regarding course materials prepared in 2006 and 2007 for classes about how to trade stocks. The First Amended Complaint alleges claims for (1) promissory fraud, (2) negligent misrepresentation, (3) breach of contract, (4) direct copyright infringement, (5) contributory copyright infringement, (6) vicarious copyright infringement, (7) inducement of copyright infringement, (8) misappropriation, and (9) unfair competition. Defendants now move pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Claims in Plaintiff's First Amended Complaint ("FAC").

The FAC includes the following general allegations. Gonzalez began his association with OTA in 1997-1998, when he first began teaching stock trading classes for OTA's predecessor. FAC ¶ 15. In 2002, Gonzalez and OTA entered into an agreement under which he would write a weekly newsletter and create special course content deliverable over the internet or via CD-ROM, and to be a guest instructor. Id. at ¶16. All of Gonzalez's activities for the benefit of OTA were as an independent contractor. Id. at ¶17. In 2004, Gonzalez and OTA entered into an agreement which superseded the 2002 agreement whereby Gonzalez agreed to create course materials for OTA. Id. at ¶18. The 2004 Agreement contained a provision stating that "[a]ll materials created on OTA's time and resources shall be the property of OTA." Id. at ¶ 22. It also specified that "OTA shall not at any time acquire or claim any right, title, or interest of any nature whatsoever (except the rights specifically granted herein) in any preexisting personal material or intellectual property." Id. In 2005, Gonzalez completed his authorship of an original course entitled "Active Investor Class." Id. at ¶ 19. In 2006, Gonzalez and OTA reached a new agreement superseding the 2004 agreement and abandoning the provision providing that all materials created on OTA's time and resources would be the property of OTA. Id. at ¶ 20. The only limitation related to Gonzalez's ownership of material created by him was a provision permitting OTA to continue offering the materials using other instructors at its discretion. Id. at ¶ 23.

In 2006 and 2007, OTA encouraged Gonzalez to update and improve earlier versions of two courses authored by him entitled "Broad Market Analysis" and "e-Mini Futures." In March 2009, Gonzalez registered both titles for copyright protection. Id. at ¶ 27. The SAC alleges that Defendants Shahar and McMahon falsely represented to him: (1) that he would receive fair market value for the use of "Broad Market Analysis" and other original works, (2) that he would be the only one allowed to teach "Broad Market Analysis," (3) that he would "participate in the growth" of the OTA entities, and (4) that he would not be terminated absent good cause. Id. at ¶ 27(a)-(d).

## Legal Standard

Plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

In deciding a 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff and must accept all factual allegations as true. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The Court must also accept as true all reasonable inferences to be drawn from the material allegations in the complaint. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). In its consideration of the motion, the Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir.), cert. denied, 512 U.S. 1219 (1994).

## Analysis

### A. The First and Second Claims for Relief should be amended to plead fraud with specificity.

Defendants argue that Plaintiff's First and Second Claims for Relief for, respectively, promissory fraud and negligent misrepresentation are insufficiently pleaded because they fail to satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that a party alleging fraud of mistake must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Defendants' point that the Complaint fails to allege who (as between Shahar and McMahon) specifically made the allegedly false representations to Plaintiff is arguably well taken. In his opposition, however, Plaintiff urges that the Complaint should be read literally - i.e., where it alleges that Shahar and McMahon made the four alleged false representations, it means that they both made them. Defendants further argue that the allegation that representations were made at "various times in 2006 and 2007" does not give them a fair opportunity to respond to the alleged misconduct. They are correct that the "when" and "where" of the fraud should be pleaded with greater specificity. The

FAC is somewhat clear as to Plaintiff's theory of "why" the alleged misstatements were false, although at least one of the allegations - i.e., the allegation that Plaintiff would be allowed to participate in the growth of OTA - is hopelessly vague. The Court, however, rejects Defendants' argument that the term "fair market value," as it pertains to his works, could not have given Gonzalez a reasonable expectation of any amount of money. It would be inappropriate to make this determination at the pleading stage.

      B.  <u>Defendants' Motion to Dismiss Plaintiff's copyright claims is denied because it is not clear from the face of the Complaint that the works were created as "works for hire."</u>

Defendants argument with respect to Plaintiff's copyright claims is also not appropriate for resolution at this stage of the lawsuit. However, the Court will require Plaintiff to amend his Complaint so it is clear which works are the subject of his copyright infringement claims. The only registered works that are referred to are the courses "Broad Market Analysis" and "Active Investor." No registration certificates are attached to the Complaint and the date(s) of authorship for both works is unclear from the pleading, except that the FAC alleges that "Active Investor" was completed sometime in 2005.

The thrust of Defendants' argument is that it is clear from the face of Plaintiff's SAC that any copyrightable material created by him as an "instructional text" was specifically designated a work for hire. 17 U.S.C § 101 defines a work made for hire as follows:

> (1) a work prepared by an employee within the scope of his or her employment; or
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

While Defendants argue that "[a]ny work made by Gonzalez is a work made for hire under both prongs" of § 101, the tests should probably be regarded as being mutually exclusive, and the factual allegations in the SAC do not compel the conclusion that Gonzalez was an "employee." Indeed, the parties appear to agree that Gonzalez was an independent contractor, so the Court must focus on the second prong.

In the Ninth Circuit, a work by an independent contractor is made for hire "so long as [it was] created at the instance and expense of the commissioning party." <u>Twentieth Century Fox Film Corp. V. Entertainment Distributing</u>, 429 F.3d 869, 877 (9th Cir. 2005). With regard to the requirement the parties agree in writing that a specially ordered or commissioned work be treated as a work made for hire, "[t]hat the agreement[] did not use the talismanic words 'specially ordered or commissioned' matters not, for there is no requirement, either in the Act or the caselaw, that work-for-hire contracts include any specific wording." <u>Warren v. Fox Family Worldwide, Inc.</u>, 328

F.3d 1136, 1142 (9th Cir. 2003).

Apparently operating under the assumption that both of the subject works were created under the 2004 Agreement, Defendants argue that the provision in the 2004 agreement that such works "shall be the property of OTA" is sufficient to show that both works were created as works for hire. Read in conjunction with the allegation that, under the 2004 agreement, Gonzalez agreed to create course materials for OTA (i.e., that the works were arguably specially ordered or commissioned works), this argument might have considerable traction, at least with respect to the "Active Investor" copyrights. But it may not be a necessary inference with respect to the "Active Investor" course and it almost certainly is not one with respect to "Broad Market Analysis." Even if it were clear from the pleadings that "Active Investor" was created as a work made for hire, it still would not be appropriate to grant Defendants' motion to dismiss because the part of Plaintiff's claim relating to "Broad Market Analysis" would still survive. Nevertheless, Plaintiff may wish to amend to plead facts showing that OTA was not the motivating factor in the creation of "Active Investor."

For future reference, the Court would make clear that it rejects Plaintiff's attempt to analogize to Playboy Enterprises v. Dumas, 55 F.3d 549, 563 (2d Cir. 1995). There, the Second Circuit held that the language, "payee acknowledges payment in full for the assignment to Playboy Enterprises, Inc. of all right, title, and interest in [subject works]" was insufficient to "either prove[] or disprove[] that the parties intended something other than a work-for-hire relationship." 55 F.3d at 552, 557. As Defendants observe, the reasoning in Dumas was largely driven by the distinction drawn by the district court in that case between owning a tangible work of fine art and the right to copy and reproduce that work of art. See id. At 564. This distinction more or less disappears in the current context.

## C. Plaintiff's claims of misappropriation and unfair competition

Plaintiff's Eighth Claim for Relief for misappropriation and Ninth Claim for Relief for "unfair competition under applicable statutory and common law" are both premised upon his alleged ownership interests in copyrighted works and Defendants' alleged "appropriation and invasion" of said interests. These claims are preempted by the Copyright Act. 17 U.S.C. § 301(a) provides:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [17 USCS § 106] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 [17 USCS §§ 102 and 103], whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

"A state law cause of action is preempted by the Copyright Act if two elements are present. First, the rights that a plaintiff asserts under state law must be 'rights that are equivalent' to those protected

by the Copyright Act. [Citations]. Second, the work involved must fall within the 'subject matter' of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103. Id." Kodadek v. MTV Networks, 152 F.3d 1209, 1212 (9th Cir. 1998). "If a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005) (citing Summit Mach. Tool Mfg. v. Victor CNC Sys., 7 F.3d 1434, 1439-40 (9th Cir. 1993); Bowers v. Baystate Techs Inc., 320 F.3d 1317, 1323-24 (Fed. Cir. 2003)).

Here, Plaintiff argues that his Eighth and Ninth Claims for Relief meet the "extra element" test because his SAC includes the allegation that "defendants are passing off Plaintiff's copyrighted works as OTA's." Id. at ¶ 87. State unfair competition laws which seek to prevent reverse palming off are not preempted by federal law. Tveter v. AB Turn-O-Matic, 633 F.2d 831, 839 (9th Cir. 1980), cert. denied, 451 U.S. 911 (1981). The bare allegation of reverse passing off is insufficient by itself to prevent preemption. As Defendants observe, when a Plaintiff creates copyrightable material and a defendant copies it, the act of copying itself establishes the elements of misappropriation. See Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., 7 F.3d 1434, 1440 (9th Cir. 1993) ("[I]f copying the lathe or the plans for the lathe in itself infringes the state-created right, then the state-created right is preempted."). Defendant correctly observes that if a plaintiff could avoid preemption simply by inserting the allegation - "Defendants are passing off Plaintiff's work as their own" in a pleading - the preemption rule would have little meaning. Nevertheless, Plaintiff will be given leave to amend if he wishes to meaningfully attempt to assert a right that is not functionally equivalent to rights protected by the Copyright Act.

## Conclusion

For the reasons stated above, Defendants' motion to dismiss will be GRANTED WITH LEAVE TO AMEND as to the FAC's First, Second, Eighth, and Ninth Claims for Relief, and DENIED as to the Fourth through Seventh Claims for Relief.