James A. McQueen (State Bar #117111)
jmcqueen@mcqueenashman.com
Sharon L. Bilbeisi (State Bar # 171994)
sbilbeisi@mcqueenashman.com
McQUEEN & ASHMAN LLP
19900 MacArthur Blvd., Suite 1150
Irvine, California 92612
Telephone: (949) 223-9601
Facsimile: (949) 223-9611

Attorneys for Plaintiff

FILED

2009 SEP -1 PM 1:51

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GONZALEZ, an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>NEWPORT EXCHANGE HOLDINGS, INC. dba ONLINE TRADING ACADEMY, a California Corporation, OTA FRANCHISE CORPORATION, a Nevada Corporation, EYAL SHAHAR, an individual and MICHAEL McMAHON, an individual, and DOES 1 to 10, inclusive,<br><br>                    Defendants. | Case No. CV09-03784 GW(AGRx)<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>(1)  **FRAUD;**<br>(2)  **NEGLIGENT MISREPRESENTATION;**<br>(3)  **BREACH OF CONTRACT;**<br>(4)  **DIRECT COPYRIGHT INFRINGEMENT;**<br>(5)  **CONTRIBUTORY COPYRIGHT INFRINGEMENT;**<br>(6)  **VICARIOUS COPYRIGHT INFRINGEMENT;**<br>(7)  **INDUCEMENT OF COPYRIGHT INFRINGEMENT;**<br>(8)  **MISAPPROPRIATION AND**<br>(9)  **UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

    This Court has original subject matter jurisdiction over all claims pursuant to

28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over Plaintiff's claim

arising under state law under 28 U.S.C. § 1367.  Plaintiff Fernando Gonzalez

("Plaintiff") alleges, on personal knowledge as to himself and on information and

belief as to others, as follows:

/ / /

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

## NATURE OF ACTION

1.     This is a civil action for damages and for injunctive relief against Defendants for violations of the United States Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.* This action arises out of Defendants' infringement of copyrights in stock trading courses to which Plaintiff owns the registered copyright rights ("Plaintiff's copyrighted works"), and related claims.

2.     Defendants operate a business that provides stock trading courses. Defendants' stock trading courses have and continue to utilize Plaintiff's copyrighted works.

3.     As alleged in detail below, Defendants violate the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (any act of Congress relating to copyright) and under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

5.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(a). This Court has personal jurisdiction over Defendants because, *inter alia*, (a) each of the Defendants or their respective agents are doing business in this district, and (b) Plaintiff is informed and believes, and on this basis alleges, that a substantial part of the wrongful acts committed by Defendants, and each of them, have occurred in interstate commerce, in the State of California, and in the Central District of California. Moreover, each of the oral representations to Plaintiff set forth below were made in Irvine, California.

## THE PARTIES

6.     Plaintiff Fernando Gonzalez ("Plaintiff" or "Mr. Gonzalez"), an individual, resides in Orange County, California.

7.     Defendant Newport Exchange Holdings, Inc., a California corporation doing business as Online Trading Academy ("OTA"), has its principal place of

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

2

Second Amended Complaint

1  business in Irvine, California.  On information and belief, OTA was incorporated in

2  1999.

3       8.    Defendant OTA Franchise Corporation, a Nevada Corporation ("OTA-

4  Franchise"), has its principal place of business in Irvine, California.  On information

5  and belief, OTA-Franchise was incorporated in 2004.  (Hereinafter, OTA and OTA-

6  Franchise are collectively referred to as the "OTA Entities.")

7       9.    Defendant Eyal Shahar ("Shahar"), an individual, resides in Orange

8  County, California.

9       10.    Defendant Michael McMahon ("McMahon"), an individual, resides in

10  Orange County, California.  (Hereinafter, McMahon, Shahar and the OTA Entities

11  are collectively referred to as the "OTA Defendants.")

12       11.    Mr. Gonzalez lacks the true names and capacities of the defendants

13  sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by

14  such fictitious names.  Mr. Gonzalez will amend this Complaint to allege their true

15  names and capacities when they have been ascertained.

16       12.    Mr. Gonzalez is informed and believes that each of the defendants

17  designated herein as a Doe is responsible in some manner for the events and

18  happenings herein alleged, as well as for the damages alleged.  (Hereinafter, the

19  OTA Defendants and the Doe defendants are collectively referred to as

20  "Defendants.")

21       13.    Mr. Gonzalez is informed and believes that each of the Defendants was

22  the agent or employee of each of the remaining Defendants and, at all relevant times

23  herein, acted within the course and scope of such agency and/or employment.

## BACKGROUND FACTS

### Pre-2002 Activities

26       14.    Mr. Gonzalez has an extensive background in direct access trading.  A

27  graduate of Boston College, in 1996 Mr. Gonzalez became an independent trader.  In

28  1998, Mr. Gonzalez began teaching stock trading classes and authored the original

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

Second Amended Complaint

1  *ProTrader Class*.  In 1999, with co-author William Rhee, Mr. Gonzalez authored the

2  book, *Strategies for the Online Day Trader* (McGraw Hill).  Since then, Mr.

3  Gonzalez has traded, authored new trading classes and newsletters, and taught in the

4  United States and abroad.

5      15.    In or about 1997, Mr. Gonzalez first began his association with OTA,

6  through its predecessor, as an independent trader/customer.  During the next year or

7  so, Mr. Gonzalez, as an independent contractor, first taught stock trading classes for

8  the predecessor of OTA, on a part time basis as an independent contractor for OTA.

9  Thereafter, for a couple of years, Mr. Gonzalez pursued non-OTA related stock

10  activities.

11                    **The 2002 Agreement**

12      16.    In 2002, Mr. Gonzalez and the OTA reached two written agreements.

13  Pursuant to the main agreement (the "2002 Agreement"), drafted by OTA, the

14  parties agreed, in exchange for certain consideration, that Mr. Gonzalez would work

15  on a part time basis as an independent contractor for OTA.  Mr. Gonzalez agreed,

16  among other things, to write a weekly newsletter, to add to the general curricula of

17  OTA, and to be a guest instructor.  Separately, Mr. Gonzalez agreed not to disclose

18  confidential information (the "Non-disclosure Agreement").

19      17.    Pursuant to the 2002 Agreement, Mr. Gonzalez commenced writing a

20  weekly newsletter, the *Weekly Review with Fernando Gonzalez* (the "*Weekly*

21  *Review*"), which newsletter was published on-line by OTA and

22  EvolutionTrading.NET, the latter a trading school organized by Mr. Gonzalez and a

23  dba of Quest Trading LLC, a California limited liability company of which Mr.

24  Gonzalez is a member ("Quest Trading").  Mr. Gonzalez also taught some classes

25  for OTA.  Some of these activities by Mr. Gonzalez were billed by Quest Trading.

26  Mr. Gonzalez wrote the *Weekly Review* and OTA and EvolutionTrading.NET

27  published it for several years.

28  / / /

McQueen & Ashman LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

4

Second Amended Complaint

18.     Also, although it did not happen, the 2002 Agreement provided for the possibility of Mr. Gonzalez creating special course material deliverable over the internet or via a CD Rom format, with such course material to be determined by Mr. Gonzalez and approved in advance by Shahar, for which Mr. Gonzalez would receive a substantial percentage of the proceeds in the form of commissions, have the right of first refusal to teach such material, and have these materials and classes promoted by OTA.

### The 2004 Agreement

19.     In or about August 2004, Mr. Gonzalez and the OTA reached a new written agreement (the "2004 Agreement"), drafted by OTA and signed by Mr. Gonzalez and OTA, which agreement superceded and replaced the 2002 Agreement. Pursuant to the 2004 Agreement, in exchange for certain consideration Mr. Gonzalez agreed, again as an independent contractor and on a part time basis, to be an instructor of trading, including electronic day trading, to create course materials, and to be a guest instructor.  The 2004 Agreement provided that, "OTA shall not at any time acquire or claim any right, title or interest of any nature whatsoever (except the rights specifically granted herein) in any pre-existing personal material or intellectual property."

20.     Pursuant to the terms of the 2004 Agreement, Mr. Gonzalez understood that to the extent he created course materials, for which he would receive $25 per hour, that OTA would have a license to use those course materials.  The 2004 Agreement provided that "[a]ll materials created on OTA's time and resources would be the property of OTA," but also that Mr. Gonzalez could "draw on and refer to material in [his] possession or publications in any media now known or hereinafter invented and refer to material contained in the articles in professional seminars and speeches . . . ," and that "OTA [would] promote the programs that involve [Mr. Gonzalez] on its web site and through its' affiliates web sites . . . [sic]."  Further the 2004 Agreement stated that "[t]he information contained within the OTA programs "

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

5

Second Amended Complaint

is not confidential or proprietary to [Mr. Gonzalez] exclusively." The 2004 Agreement did not state that OTA acquired any "copyright."

### Precursor to the 2006 Agreement

21.    In or about late-2005, Mr. Gonzalez and OTA entered into new negotiations whereby Shahar and McMahon agreed all course materials created by Mr. Gonzalez would be unequivocally owned by Mr. Gonzalez. This addressed the ongoing concern of Mr. Gonzalez that valuable original course material created by Mr. Gonzalez not be claimed by OTA, and the ongoing desire of OTA that Mr. Gonzalez devote more of his time creating course materials and assisting in the growth and development of OTA.

22.    In late-2005, in Irvine, California, Shahar and McMahon each orally represented to Mr. Gonzalez, among other things, that OTA would enter into a new written agreement with Mr. Gonzalez unequivocally protecting his ownership rights in course materials created by him, in return for which Mr. Gonzalez agreed to create new course materials and devote more time and energy to OTA. It was only as a result of this representation by Shahar and McMahon that Mr. Gonzalez completed his authorship of an original course entitled *Active Investor Class* ("*Active Investor*"), in or about late-2005. Specifically, Mr. Gonzalez created *Active Investor* with the belief, based on the representations of Shahar and McMahon, that ownership would reside in him, not OTA.

### The 2006 Agreement

23.    In or about mid-January 2006, Mr. Gonzalez and the OTA reached a new written agreement, which agreement superceded and replaced the 2004 Agreement. Pursuant to this new agreement (the "2006 Agreement"), drafted by OTA, in exchange for certain consideration Mr. Gonzalez agreed to devote 40 hours per week as an independent contractor to write his newsletter, to educate and guide participants in trading and, in particular, electronic day trading, to be a lead instructor, to mentor, and to be a guest instructor.

McQueen & Ashman LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

6

Second Amended Complaint

24.    In exchange for the above-described tasks, the 2006 Agreement compensated Mr. Gonzalez, as follows:

    a.    Base rate of $3,500 per month.

    b.    An additional $200 per day of class taught as a lead instructor.

    c.    An additional $325 per day teaching on the road at other centers.

    d.    An additional $350 for each ten-week period of mentoring assigned to Mr. Gonzalez.

    e.    Reimbursement of reasonable business expenses.

25.    As a result of the negotiations of Mr. Gonzalez and consistent with the late-2005 representations of Shahar and McMahon described above, the 2006 Agreement abandoned the provision in the 2004 Agreement providing that "[a]ll materials created on OTA's time and resources shall be the property of OTA." Thus, this quoted provision became null and void. At the same time, the 2006 Agreement reiterated, "OTA shall not at any time acquire or claim any right, title or interest of any nature whatsoever (except for the rights specifically granted herein) in any pre-existing personal material or intellectual property [of Mr. Gonzalez]." Finally, other than the newsletters, the 2006 Agreement did not compensate Mr. Gonzalez for writing and did not contemplate the creation of new course material.

26.    The only limitation related to ownership by Mr. Gonzalez of the materials to be created by Mr. Gonzalez pursuant to the 2006 Agreement, the newsletters, was, in pertinent part, as follows:

"It is specifically understood and agreed, that the Programs to be developed and promoted as described herein, will be an integral part of OTA's educational offering to the public and to related businesses and may, . . . at OTA's discretion, continue to be offered to the public and related businesses regardless of termination we may offer it using other instructors [sic]."

/ / /

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

Second Amended Complaint

27.    The 2006 Agreement expressly provided that OTA did not have any interest in the pre-existing intellectual property of Mr. Gonzalez.  This provision bars any claim of interest in or right to use issues of the *Weekly Reviews* authored from 2002 through 2005 and the *Active Investor* class authored in 2005.  Mr. Gonzalez performed pursuant to the 2006 Agreement and the assurances of the OTA that it was the operative agreement between him and OTA.

## OTA Business Developments

28.    Two significant business developments occurred at OTA after the parties entered into the 2006 Agreement.  First, the OTA Entities greatly expanded their franchise operation.  In 2005, on information and belief, the OTA Entities had opened one franchise operation, in Dallas, Texas.  After the date of the 2006 Agreement, the OTA Entities opened numerous franchise operations.  On information and belief, by the end of 2008 the OTA Entities operated approximately 30 franchise operations in the United States and abroad.

29.    In addition, beginning in or about 2007, with the assistance of Mr. Gonzalez, OTA developed web based classes, which classes OTA called extended learning track, or XLT.  XLT provided "live" instruction to students vis-à-vis their computers, with the ability for students to review the class afterwards.  The web based XLT program commanded a premium over the in-house class courses by the OTA Entities.

## The Signing of the 2006 Agreement

30.    On or about January 16, 2006, McMahon sent an e-mail to Shahar, with a copy to Mr. Gonzalez, essentially describing the terms of the 2006 Agreement, and stating that he would "make up a memorandum that reflects all this and have all parties sign."  Shortly thereafter, in Irvine, California, McMahon presented the written 2006 Agreement to Mr. Gonzalez, which Mr. Gonzalez signed as requested. Several times thereafter in Irvine in the first quarter of 2006, when Mr. Gonzalez

/ / /

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

Second Amended Complaint

1    asked McMahon to provide him a signed copy of the 2006 Agreement, McMahon
2    orally assured him he would do so.

3         31.    Commencing in or about February 2006 and thereafter, Mr. Gonzalez
4    received checks signed by Shahar in the amounts newly provided for by the 2006
5    Agreement.

6         32.    In or about November 2008, Mr. Gonzalez realized he did not have a
7    copy of the 2006 Agreement to which Shahar had affixed his signature.  On or about
8    November 11, 2008, Mr. Gonzalez asked McMahon in his office in Irvine to provide
9    him one, to which McMahon said, I will just e-mail it to you.

10        33.    On or about November 11, 2008, attached to an e-mail which included
11   the colored logo of OTA, representing its signature, McMahon transmitted the 2006
12   Agreement to Mr. Gonzalez.

13   **<u>Oral Representations Separate from the Terms of the 2006 Agreement</u>**

14        34.    In addition to the late-2005 representations described above, in 2006,
15   2007, and continuing into 2008, the OTA Defendants encouraged Mr. Gonzalez,
16   among other things, to become more involved in the business of the OTA Entities
17   and to rewrite, update and improve earlier versions of a very popular original course
18   authored by Mr. Gonzalez on broad markets, entitled *Broad Market Analysis*
19   ("*Broad Market Analysis*"), and another course entitled *e-Mini Futures* ("*e-Mini*
20   *Futures*"), the latter of which derives much content from *Broad Market Analysis* and
21   *Active Investor*, and Mr. Gonzalez did as encouraged, among other things by
22   completing authorship of a substantially revised version of *Broad Market Analysis* in
23   or about September 2007.  The representations made to Mr. Gonzalez by the OTA
24   Defendants, as set forth in more detail in the fraud claim below, are as follows:

25              a.    That Mr. Gonzalez would receive fair market value from the
26                   OTA Entities for use of *Broad Market Analysis* and other
27                   original work;

28   / / /

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

Second Amended Complaint

b.     Initially, that to protect his interests Mr. Gonzalez would be the only one allowed to teach *Broad Market Analysis* and *Active Investor*;

c.     That Mr. Gonzalez would participate in the growth of the OTA Entities; and

d.     That the OTA Entities would not terminate the services of Mr. Gonzalez absent good cause.

35.     Contrary to the representations of the OTA Defendants, in late 2006 or early 2007 the OTA Entities required Mr. Gonzalez to teach another instructor how to teach *Broad Market Analysis* to students. Then, in or about the latter part of 2007, the OTA Entities caused Mr. Gonzalez to teach a number of other instructors how to teach *Broad Market Analysis* (and other course material) – based on the purported need for back-up instructors and the assurance that this would allow Mr. Gonzalez to meet demand for *Broad Market Analysis* on XLT, which Mr. Gonzalez continued exclusively to teach for the OTA Entities.

36.     Commencing in 2007 and continuing in 2008, Mr. Gonzalez attempted to obtain a written agreement for fair market compensation for use of Plaintiff's copyrighted works. Affirmations were made, but the reality is that the proposals became less and less rewarding. Further, as time went on McMahon began threatening that Mr. Gonzalez would have to find another job if he did not acquiesce to various demands. Ultimately, Mr. Gonzalez became disenchanted with his treatment by the OTA Defendants.

## **Copyright Infringement**

37.     Since January 22, 2009, Defendants have publicly reproduced, distributed, and displayed Plaintiffs' copyrighted works, *Broad Market Analysis* and *Active Investor*, without the authorization or permission of Mr. Gonzalez. On or about January 23, 2009, Mr. Gonzalez demanded in writing that OTA, Shahar and McMahon cease using any and all intellectual property created by Mr. Gonzalez.

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

10

Second Amended Complaint

On information and belief, the demand of Mr. Gonzalez was ignored.  Effective March 10, 2009, Mr. Gonzalez registered both *Broad Market Analysis* and *Active Investor* for copyright protection.

## CLAIMS FOR RELIEF

## FIRST CLAIM

### (Fraud Against All Defendants)

38.     Plaintiff incorporates herein by reference each and every averment contained in paragraphs 1 through 37, inclusive.

### Concealment of Material Fact

39.     McMahon and Shahar each failed to advise Mr. Gonzalez that Shahar had not affixed his signature to the 2006 Agreement presented by McMahon to and signed by Mr. Gonzalez in January 2006.

40.     The failure to disclose that Shahar had not affixed his signature to the 2006 Agreement was done by Defendants with the intent to induce Mr. Gonzalez to provide services pursuant to the 2006 Agreement and to substantially update and improve *Broad Market Analysis*.

41.     By their conduct in Irvine, California, commencing in January 2006, including accepting the increased services of Mr. Gonzalez and paying him pursuant to the terms of the 2006 Agreement, and in the case of McMahon, on several occasions in early 2006 and in November 2008, by not disclosing to Mr. Gonzalez despite his inquiries that Shahar had not affixed his signature to the 2006 Agreement, Shahar and McMahon each caused Mr. Gonzalez reasonably to believe that Shahar had affixed his signature to the 2006 Agreement and that it was a valid and enforceable contract.  On information and belief, the reliance of Mr. Gonzalez was further supported by the fact that Shahar had signed the 2004 Agreement in or about August 2004, at about the time the 2004 Agreement was signed by Mr. Gonzalez.

/ / /

McQueen & Ashman LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

42.     As a result of the failure to disclose that Shahar had not affixed his signature to the 2006 Agreement, Mr. Gonzalez, among other things, provided services pursuant to the 2006 Agreement and substantially updated and improved *Broad Market Analysis*.

43.     Assuming arguendo that the 2006 Agreement is in any manner unenforceable as a result of the failure of Shahar to affix his signature thereto, as now claimed by OTA, Mr. Gonzalez has been damaged as a proximate result thereof, in an amount subject to proof at trial.

44.     The aforementioned conduct of defendants was intentional, fraudulent, despicable, and in conscious disregard of the rights of Mr. Gonzalez, entitling him to an award of exemplary and punitive damages.

## Promissory Fraud

45.     At various times in 2006, 2007 and 2008, in Irvine, California, Shahar and McMahon each orally made certain false promises to Mr. Gonzalez, including the following:

a.      That Mr. Gonzalez would receive fair market value for *Broad Market Analysis* and other original work, by McMahon commencing in or about late 2006, and every few months thereafter in 2007 and early 2008.  Consistent therewith, on these occasions McMahon would assure Mr. Gonzalez that he would be "fairly compensated" for his intellectual property, would be "taken care of," and would receive his "fair share," and/or that McMahon would talk to Shahar and put the compensation together.  Further, during the latter part of 2008, Shahar purported to negotiate further compensation for Mr. Gonzalez related, in part, to his creation of course material.

b.      That to protect his interests Mr. Gonzalez would be the only one allowed to teach *Broad Market Analysis* and *Active Investor,* by McMahon, in the first half of 2006, and by Shahar, later in 2006.  Subsequently, Brandon Wendell, and then other instructors were allowed to teach *Broad Market Analysis* and *Active*

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

Second Amended Complaint

*Investor*, which Shahar excused, in late 2006 or early 2007, as necessary to allow Mr. Gonzalez to take a day off and, later, in or about the latter part of 2007, to allow Mr. Gonzalez more time exclusively to teach *Broad Market Analysis* as part of OTA's XLT offerings.

        c.    That Mr. Gonzalez would participate in the growth of the OTA Entities, through, among other things, ownership and teaching of course material created by Mr. Gonzalez, helping design the overall teaching approach by OTA, and participating in the "All Star" sales program developed by OTA in 2008, by McMahon, on multiple occasions in or about 2007, and by Shahar, in the second half of 2008. This included an oral promise by Shahar to pay a cash equivalent of an equity interest in the event OTA was sold, a purported offer of share appreciation rights, or SARs, the latter reflected by a document Shahar showed Mr. Gonzalez at a dinner in Irvine in late 2008, and an oral, purported offer of $60,000 payable over time shortly thereafter. Also, this included Shahar's oral representation in or about November 2008 that Mr. Gonzalez would receive a percent of sales generated at "All Star" events, plus reimbursement of expenses.

        d.    That the OTA Entities would not terminate Mr. Gonzalez absent good cause, by McMahon periodically in 2006 and 2007, and by both McMahon and Shahar on several occasions in 2008. Consistent therewith, Shahar and McMahon each assured Mr. Gonzalez that he was a special instructor and asset to the organization, and that if the organization was ever down-sized, that Mr. Gonzalez and Merlin Rothfeld would be the last ones to go.

        46.    At the time the OTA Defendants made the aforementioned promises, they did not intend to honor them. Instead, they engaged in a pattern of excuses and delay. Thus, in late 2006 or early 2007 Shahar and McMahon each informed Mr. Gonzalez that he needed to teach one other instructor, Brandon Wendell, how to teach *Broad Market Analysis* to students, for times when Mr. Gonzalez was off work.

McQueen & Ashman LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

13

Second Amended Complaint

47.     By 2008, Mr. Gonzalez had been subjected to repeated pressure by both Shahar and McMahon to teach *Broad Market Analysis* and *Active Investor* to other instructors, to which he relented.  They orally represented to Mr. Gonzalez that this cross-training was necessary to allow Mr. Gonzalez to keep up with demand for the XLT online program, on which *Broad Market Analysis* continued exclusively to be taught by Mr. Gonzalez.  But one threat, by McMahon, was that Mr. Gonzalez would have to find another job if he was unwilling to teach *Broad Market Analysis* and *Active Investor* to other instructors – directly contrary to the earlier, false representation that Mr. Gonzalez would be the last to go (along with Rothfeld).

48.     At the same time, during 2007 and 2008, when Mr. Gonzalez attempted to discuss fair market compensation for Plaintiff's copyrighted works, affirmations were made, but he was put off.  Finally, at the end of 2008, frustrated, disappointed and overworked, Mr. Gonzalez made an offer to Shahar to accept compensation far below the fair market value of Plaintiff's copyrighted works to resolve the issue.  In response, Shahar counter-offered at an even lower figure, $60,000 payable over three years (only a pittance of that to which Mr. Gonzalez was entitled), and threatened Mr. Gonzalez with his lawyer.

49.     In a conversation that occurred on or about January 15, 2009, Mr. Gonzalez informed Shahar that his counter-offer was rejected, and that perhaps it would be best if Mr. Gonzalez ceased providing services to the OTA Entities after a transition period of several months, to which Shahar immediately said, "so you want to resign?"  On or about January 22, 2009, OTA unilaterally terminated the relationship with Mr. Gonzalez.

50.     In conjunction with OTA's termination of the services of Mr. Gonzalez, OTA generally deleted his name and image from its website and from Plaintiff's copyrighted works, and OTA began passing off Plaintiff's copyrighted works as its own.  At the same time, the OTA Defendants systematically reorganized course offerings in an attempt to maximize their use of Plaintiff's copyrighted works.

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

14

Second Amended Complaint

51.     In falsely promising to Mr. Gonzalez that he would receive fair market value for use of *Broad Market Analysis* and other original work, that only Mr. Gonzalez would be allowed to teach *Broad Market Analysis* and *Active Investor*, that Mr. Gonzalez would participate in the growth of the OTA Entities, and that the services of Mr. Gonzalez would not be terminated absent good cause, the intent was to induce Mr. Gonzalez, among other things, to become more involved in the business of the OTA Entities and to update and improve *Broad Market Analysis* and *e-Mini Futures*.  Mr. Gonzalez, in reasonable reliance thereon, did become more involved in the business, working approximately 60 hours per week, and updated and substantially improved *Broad Market Analysis* and *e-Mini Futures*.  With *Broad Market Analysis*, in particular, Mr. Gonzalez completely revamped the course, adding animation and substantial content, among other intrinsic changes, allowing the class to be taught more dynamically and efficiently than previously.

52.     As a proximate result of the false promises made, Mr. Gonzalez suffered significant damages, in an amount subject to proof at trial.

53.     The aforementioned conduct of defendants was intentional, fraudulent, despicable, and in conscious disregard of the rights of Mr. Gonzalez, entitling him to an award of exemplary and punitive damages.

## SECOND CLAIM

### (Negligent Misrepresentation Against All Defendants)

54.     Plaintiff incorporates herein by reference each and every averment contained in paragraphs 1 through 37 and 41 through 43, inclusive.

55.     McMahon and Shahar each failed to advise Mr. Gonzalez that Shahar had not affixed his signature to the 2006 Agreement presented by McMahon to and signed by Mr. Gonzalez in January 2006.

56.     Mr. Gonzalez is informed and believes that if the failure of Shahar and McMahon to disclose that Shahar had not affixed his signature to the 2006

/ / /

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

15

Second Amended Complaint

1 | Agreement was not a knowing deception by Shahar and McMahon when done, then

2 | it was certainly reckless and/or negligent.

3 |     57.    Mr. Gonzalez is informed and believes that Shahar and McMahon knew

4 | or should have known when they failed to disclose that Shahar had not affixed his

5 | signature to the 2006 Agreement, that this was a material omission of fact.

6 |     58.    Mr. Gonzalez is informed and believes that Shahar and McMahon knew

7 | or should have known that Mr. Gonzalez would reasonably rely upon their failure to

8 | disclose that Shahar had not affixed his signature to the 2006 Agreement and would

9 | take affirmative actions based thereon, which in fact Mr. Gonzalez did.

10 |     59.    Assuming arguendo that the 2006 Agreement is in any manner

11 | unenforceable as a result of the failure of Shahar to affix his signature thereto, Mr.

12 | Gonzalez is informed and believes that Shahar and McMahon knew or should have

13 | known that if Mr. Gonzalez believed Shahar had affixed his signature to the 2006

14 | Agreement as a result of their fraudulent omission to disclose otherwise, this would

15 | cause Mr. Gonzalez to sustain and continue to sustain damages.

16 |     60.    Assuming arguendo that the 2006 Agreement is in any manner

17 | unenforceable as a result of the failure of Shahar to affix his signature thereto, by

18 | reason of the aforementioned negligent conduct, and as a direct and foreseeable

19 | consequence thereof, Mr. Gonzalez has been damaged in an amount subject to proof

20 | at trial.

21 | **THIRD CLAIM**

22 | **(Breach of Contract Against OTA)**

23 |     61.    Plaintiff incorporates herein by reference each and every averment

24 | contained in paragraphs 1 through 37, inclusive.

25 |     62.    Over time, by mutual agreement, for good consideration, including the

26 | substantial value of the instructing and mentoring performed by Mr. Gonzalez to

27 | OTA, the 2006 Agreement was orally modified (the "Revised 2006 Agreement"), as

28 | follows:

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

Second Amended Complaint

a.    The base rate of $3,500 per month was increased to $5,000 per month.

b.    The additional rate paid for teaching live classes was increased to $620 per day.

c.    The additional rate paid for teaching the XLT online *Broad Market Analysis* class was set at $400 per student.

d.    Payments were to be made to Mr. Gonzalez from OTA-Franchise.

63.    Except as excused by the acts and omissions of OTA, Mr. Gonzalez has at all times performed the terms of the Revised 2006 Agreement.

64.    OTA has breached the terms of the Revised 2006 Agreement by failing to pay or cause to be paid, despite demand, the following:

a.    The base-rate pay for January 2009, in the amount of $5,000.

b.    For teaching a live *Broad Market Analysis* class in Charlotte on January 17-18, 2009.

c.    For the 37 students who signed up for the XLT online *Broad Market Analysis* class in January 2009.

d.    For reasonable expenses incurred for services provided to the OTA Entities.

e.    Less payment by OTA in the amount of $3,548.38 to Mr. Gonzalez on January 22, 2009.

65.    By reason of OTA's breaches of the Revised 2006 Agreement, Mr. Gonzalez is entitled to $20,999.83.

66.    The Revised 2006 Agreement provides for reasonable attorneys' fees to the prevailing party. Mr. Gonzalez is entitled to recover his reasonable attorneys' fees, in an amount subject to proof at trial.

/ / /

/ / /

McQueen & Ashman LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

17

Second Amended Complaint

## FOURTH CLAIM

### (Direct Copyright Infringement Against all Defendants)

67.     Plaintiff incorporates herein by reference each and every averment contained in paragraphs 1 through 37, inclusive.

68.     Through its conduct averred herein, Defendants have infringed Plaintiff's copyrights in his works, *Broad Market Analysis* and *Active Investor*, including by teaching stock trading courses embodying the copyrighted material without authorization in violation of 17 U.S.C. §§ 106 *et seq.*, and 501.

69.     Each infringement by Defendants of Plaintiff's copyrighted works constitutes a separate and distinct act of infringement.

70.     Defendants' acts of infringement were willful, in disregard of and with indifference to the rights of Plaintiff.

71.     As a direct and proximate result of the infringements by Defendants, Plaintiff is entitled to damages and the profits of the OTA Entities in amounts to be proven at trial which are not currently ascertainable.

72.     Alternatively, Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504.

73.     Plaintiff further is entitled to recover his attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

74.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in his copyrighted works.  Plaintiff is entitled to preliminary and permanent injunctive relief.

/ / /

/ / /

McQueen & Ashman LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

18

Second Amended Complaint

## FIFTH CLAIM

### (Contributory Copyright Infringement Against all Defendants)

75.     Plaintiff incorporates herein by reference each and every averment contained in paragraphs 1 through 37, and 68, inclusive.

76.     Defendants knowingly and systematically have materially contributed to intentionally inducing, and/or causing the instructors and franchisees of the OTA Entities to infringe Plaintiff's copyrights, including by materially contributing to, intentionally inducing, and/or causing unauthorized reproductions and distributions of works embodying the copyrighted material without authorization in violation of 17 U.S.C. §§ 106 *et seq.*, and 501.  Notwithstanding such knowledge, Defendants have failed to take measures, readily available to Defendants that could prevent further damage to Plaintiff's copyrighted works.

77.     Each infringement by Defendants of Plaintiff's copyrighted works constitutes a separate and distinct act of infringement.

78.     Defendants' acts of infringement were willful, in disregard of and with indifference to the rights of Plaintiff.

79.     As a direct and proximate result of the infringements by Defendants, Plaintiff is entitled to damages and profits of the OTA Entities in amounts to be proven at trial which are not currently ascertainable.

80.     Alternatively, Plaintiff is entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504.

81.     Plaintiff further is entitled to recover his attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

82.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

his copyrighted works.  Plaintiff is entitled to preliminary and permanent injunctive relief.

### SIXTH CLAIM

### (Vicarious Copyright Infringement Against all Defendants)

83.     Plaintiff incorporates herein by reference each and every averment contained in paragraphs 1 through 37, and 68, inclusive.

84.     Defendants have the right and ability to supervise and/or control the infringing conduct of the instructors and franchisees of the OTA Entities. Defendants have refused to exercise such supervision and control to the extent required by law.  As a direct and proximate result of such refusal, instructors and franchisees of the OTA Entities have infringed Plaintiff's copyrights, including by reproducing and distributing works embodying the copyrighted material without authorization in violation of 17 U.S.C. §§ 106 *et seq.*, and 501.  Defendants derive a direct financial benefit, including but not limited to student revenue, and from the increase in the value of OTA and OTA-Franchise, that flows directly from violation of Plaintiff's copyrighted works.

85.     Each infringement by Defendants of Plaintiff's copyrighted works constitutes a separate and distinct act of infringement.

86.     Defendants' acts of infringement were willful, in disregard of and with indifference to the rights of Plaintiff.

87.     As a direct and proximate result of the infringements by Defendants, Plaintiff is entitled to damages and of profits the OTA Entities in amounts to be proven at trial which are not currently ascertainable.

88.     Alternatively, Plaintiff is entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504.

89.     Plaintiff further is entitled to recover his attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

McQueen & Ashmian LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

20

Second Amended Complaint

90.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in his copyrighted works, Plaintiff is entitled to preliminary and permanent injunctive relief.

## SEVENTH CLAIM

### (Inducing Copyright Infringement Against all Defendants)

91.     Plaintiff incorporates herein by reference each and every averment contained in paragraphs 1 through 37, and 68, inclusive.

92.     Through its conduct averred herein, Defendants have infringed Plaintiff's copyrights by inducing instructors and franchises of the OTA Entities to reproduce and distribute works embodying the copyrighted material without authorization in violation of 17 U.S.C. §§ 106, *et seq.*, and 501.

93.     Each infringement by Defendants of Plaintiff's copyrighted works constitutes a separate and distinct act of infringement.

94.     Defendants' acts of infringement were willful, in disregard of and with indifference to the rights of Plaintiff.

95.     As a direct and proximate result of the infringements by Defendants, Plaintiff is entitled to damages and of profits of the OTA Entities in amounts to be proven at trial which are not currently ascertainable.

96.     Alternatively, Plaintiff is entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504.

97.     Plaintiff further is entitled to recover his attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

98.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate and

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

21

Second Amended Complaint

irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in his copyrighted works.  Plaintiff's is entitled to preliminary and permanent injunctive relief.

## EIGHTH CLAIM

### (Statutory and Common Law Misappropriation Against all Defendants)

99.   Plaintiff incorporates herein by reference each and every averment contained in paragraphs 1 through 37, 39 through 42, and 68, inclusive.

100.   Plaintiff possesses exclusive ownership interests in and to Plaintiff's copyrighted works in and to under applicable statutory and common law.

101.   Through its conduct, Defendants have violated Plaintiff's exclusive ownership interest in and to Plaintiff's copyrighted works, including by publicly reproducing, distributing and displaying all or substantially all of the content of Plaintiff's copyrighted works.  In addition, on information and belief, Defendants are passing off Plaintiff's copyrighted works as OTA's.

102.   On information and belief, commencing in or about January of 2009, Shahar and McMahon each began representing to third parties that the 2004 Agreement was the operative agreement between OTA and Mr. Gonzalez, and denying or concealing the existence of the 2006 Agreement.  Based ostensibly thereon, Shahar and McMahon asserted to third parties, including OTA franchisees and instructors who were independent contractors at the time, that Mr. Gonzalez had falsely claimed a copyrightable interest in *Broad Market Analysis* and *Active Investor*, and that OTA was the rightful owner of the intellectual property contained therein.

103.   As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to recover all proceeds and other compensation received or to be received by Defendants arising from the infringements of Plaintiff's copyrighted works.

/ / /

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

Second Amended Complaint

1  Plaintiff requests the Court to order Defendants to render an accounting to ascertain
2  the amount of such profits and compensation.

3       104.   As a direct and proximate result of Defendants' conduct in violation of
4  Plaintiff's exclusive ownership interests in and to Plaintiff's copyrighted works,
5  Defendants have been unjustly enriched and Plaintiff has been damaged in an
6  amount to be proven at trial for which damages and/or restitution and disgorgement
7  is appropriate.   Such damages and/or restitution and disgorgement should include a
8  declaration by this Court that Defendants are constructive trustee for the benefit of
9  Plaintiff, and an order that Defendants convey to Plaintiff all the gross receipts
10  received or to be received that are attributable to infringement of Plaintiff's
11  copyrighted works.

12       105.   Through its conduct, Defendants are guilty of oppression, fraud or
13  malice; Plaintiff, in addition to his actual damages is by reason thereof entitled to
14  recover exemplary and punitive damages against Defendants.

15       106.   As a direct and proximate result of the foregoing acts and conduct,
16  Plaintiff has sustained and will continue to sustain substantial, immediate and
17  irreparable injury, for which there is no adequate remedy at law.   Unless enjoined
18  and restrained by this Court, Defendants will continue to infringe Plaintiff's rights
19  in Plaintiff's copyrighted works.   Plaintiff is entitled to preliminary and permanent
20  injunctive relief.

21           **NINTH CLAIM**
22      **(Unfair Competition Against all Defendants)**

23       107.   Plaintiff incorporates herein by reference each and every averment
24  contained in paragraphs 1 through 37, 68, 39 through 42, and 100 through 102,
25  inclusive.

26       108.   The acts and conduct of Defendants constitute an appropriation and
27  invasion of the property rights of Plaintiff, and constitute unfair competition under
28  applicable statutory and common law.

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

109.   As a direct and proximate result of Defendants' conduct, Plaintiff is further entitled to recover all proceeds and other compensation received or to be received by Defendants arising from the infringements Plaintiff requests the Court to order Defendants to render an accounting to ascertain the amount of such profits and compensation.

110.   As a direct and proximate result of Defendants' unfair competition, Plaintiff has been damaged, and Defendants unjustly enriched, in an amount to be proven at trial for which damages and/or restitution and disgorgement is appropriate. Such damages and/or restitution and disgorgement should include a declaration by this Court and Defendants are a constructive trustee for the benefit of Plaintiff, and an order that Defendants convey to Plaintiff all the gross receipts received or to be received that are attributable to the infringement.

111.   Through its conduct, Defendants are guilty of oppression, fraud or malice.  Plaintiff, in addition to his actual damages, is by reason thereof entitled to recover exemplary and punitive damages against Defendants.

112.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights. Plaintiff is entitled to preliminary and permanent injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants Online Trading Academy, Eyal Shahar, Michael McMahon as follows:

1.   On the first through third claims, for compensatory damages.

2.   On the fourth through ninth claims, for Plaintiff's damages and the profits of the OTA Entities in such an amount as may be found; alternatively, on the fourth through seventh claims, for maximum statutory damages in the amount of $150,000 with respect to each copyrighted work infringed either directly or

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

24

Second Amended Complaint

1   indirectly, or for such other amounts as may be proper pursuant to 17 U.S.C.

2   § 504(c).

3        3.     On the fourth through ninth claims, for preliminary and permanent

4   injunctions enjoining Defendants, and all persons acting in concert or participation

5   with Defendants, from:  (a) directly or indirectly reproducing, distributing, or

6   otherwise infringing in any manner on Plaintiff's copyrighted works, whether now

7   in existence or hereinafter created; and (b) causing, contributing to, inducing,

8   enabling, facilitating, or participating in the infringement of any of Plaintiff's

9   copyrighted works.

10        4.     On the fourth through ninth claims, for restitution of OTA's and OTA-

11   Franchise's unlawful proceeds.

12        5.     On the first and fourth through ninth claims, for an accounting and the

13   imposition of a constructive trust.

14        6.     For punitive and exemplary damages, as authorized for Plaintiff's first,

15   eighth and ninth claims, in such amount as may be awarded at trial.

16        7.     For prejudgment interest according to law.

17        8.     On the third through seventh claims, for Plaintiff's attorneys' fees.

18        9.     For Plaintiff's costs incurred in this action.

19       10.     For such other and further relief as the Court may deem just and proper.

20

21   Dated:  September 1, 2009      McQUEEN & ASHMAN LLP

22

23

24               By: _____

25                    James A. McQueen

26                    Attorneys for Plaintiff
                    FERNANDO GONZALEZ

27

28

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

25

Second Amended Complaint

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all issues triable by jury.

Dated:  September 1, 2009          McQUEEN & ASHMAN LLP

By _____
       James A. McQueen
       Attorneys for Plaintiff
       FERNANDO GONZALEZ

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

Second Amended Complaint

# CERTIFICATE OF SERVICE
(United States District Court)

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 19900 MacArthur Blvd., Suite 1150, Irvine, California 92612.

On **September 1, 2009**, I served the foregoing document(s) described as **SECOND AMENDED COMPLAINT** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as set forth below:

Mark Eisenhut
Scott P. Shaw
Call, Jensen & Ferrell
610 Newport Center Drive – Suite 700
Newport Beach, CA 92660

[ √ ]   (BY U.S. MAIL)  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[  ]   (BY ELECTRONIC SERVICE)  I caused such document to be served on the Filing User(s) through the Court's Electronic Filing System.

[ √ ]   (FEDERAL) I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct.

Executed on **September 1, 2009**, at Irvine, California.

Linda Frazier

McQUEEN & ASHMAN LLP
19900 MacArthur Blvd.
Suite 1150
Irvine, CA 92612

CERTIFICATE OF SERVICE ON SECOND AMENDED COMPLAINT